UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00566-CRS

**ROBERT N.**                                                                                           **PLAINTIFF**

VS.

**KILOLO KIJAKAZI,** *Acting*
*Commissioner of Social Security*                                                    **DEFENDANT**

### REPORT AND RECOMMENDATION

Claimant Robert N. ("Claimant") appeals from the final determination of the Commissioner of Social Security denying his application for disability insurance benefits. Claimant has filed a Fact and Law Summary and Brief. (DN 17). The Commissioner has responded in a Fact and Law Summary. (DN 19). Claimant filed a reply brief. (DN 20). The District Judge has referred the case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 14).

### I. Findings of Fact

Claimant filed for disability insurance benefits under Title II on July 16, 2020. (Tr. 208). His application alleged disability beginning May 10, 2013 based on: post-traumatic stress disorder ("PTSD"), hearing loss, chronic back pain, headaches, and insomnia. (Tr. 232). Claimant's application was denied on initial review and again on reconsideration. (Tr. 69, 77). Administrative Law Judge John Price ("ALJ Price") conducted a hearing in Louisville,

Kentucky, on October 28, 2021. (Tr. 30-31). Claimant attended the hearing by telephone with his attorney.[1] (*Id.*). An impartial vocational expert ("VE") also attended the hearing. (*Id.*).

During the hearing, Claimant testified to the following. Prior to joining the Marines in 2009, Claimant worked as a delivery person/installer for a retail store. (Tr. 62). Toward the end of his service in 2013, he worked as a payroll clerk due to pain in his back. (*Id.*). Claimant allegedly suffers from PTSD stemming from traumatic events he experienced during his time in the Marines. (Tr. 537). As a result, he is now hypervigilant and freezes up whenever he encounters a loud noise. (Tr. 52-53). He mainly stays indoors because there are too many environmental factors outside that he cannot control. (Tr. 57). Claimant has been prescribed counseling as well as multiple medications to combat his PTSD. (Tr. 43-44).

As for Claimant's physical health problems, although he reports experiencing headaches every day, his main ailment appears to be his back pain. (Tr. 57). Claimant describes his pain as analogous to somebody "shoving a spear in my back on a good day and on a bad day it feels like they're twisting." (Tr. 37). This pain has allegedly limited his range of motion and he can barely reach his arms above his head. (Tr. 60). Its severity forced him to withdraw from college. (Tr. 41). He explains that sitting for long stretches of time adds to his pain, so he spends a significant portion of his day laying down to take pressure off his back. (Tr. 46, 50). Despite his pain, Claimant can drive short distances and go to the store. (Tr. 45). He occasionally performs chores around his house; however, the impact of these activities on his back sometimes take him as long as a week to recover. (Tr. 57). Claimant reports that his back pain affects his memory and ability to focus and disturbs his sleep. (Tr. 41, 45). Claimant has also been prescribed multiple medications to manage his back pain and sleeping patterns. (Tr. 44). Even with these

---

[1] Claimant agreed to appear at the administrative hearing by phone due to the extraordinary circumstances surrounding the COVID-19 pandemic. (Tr. 15).

medications and other attempts to remedy his back, he states that his pain has been consistent and has worsened every year. (Tr. 37). He reports that the only activity that he enjoys anymore is video gaming. (Tr. 58).

ALJ Price issued an unfavorable decision on November 22, 2021. (Tr. 12). He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 10, 2013 through his date last insured of December 31, 2018. (Tr. 18). Second, Claimant had the severe impairments of degenerative disc disease, migraines, mild hearing loss, PTSD, and depression. (*Id.*). Third, through the date last insured, none of Claimant's impairments or combination of impairments met or medically equaled the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). Between steps three and four, ALJ Price found Claimant had the residual functional capacity to perform "light work" as defined in 20 CFR § 404.1567(b) with the following exertional limitations:

> [C]laimant must have an option to sit/stand at 30–45-minute intervals taking a minute or two to change position. The claimant must avoid overhead reaching and avoid climb [sic] ladders, ropes, and scaffolds. He can occasionally stoop, kneel, crouch, and crawl. The claimant should avoid hazards such as unprotected heights and dangerous moving machinery. He should avoid more than moderate noise and avoid bright light situations such as work outdoors. The claimant is capable of simple, routine non-detailed and non-complex job tasks with avoidance of the general public.

(Tr. 20).

Fourth, ALJ Price found Claimant was unable to perform any of his past relevant work. (Tr. 23). Fifth and finally, considering Claimant's age, education, work experience, and residual functional capacity ("RFC"), there were jobs that existed in significant numbers in the national

economy that he could have performed. (Tr. 24). ALJ Price concluded Claimant was not under a disability, as defined in the Social Security Act, at any time from May 10, 2013, the alleged onset date, through December 31, 2018, the date last insured. (Tr. 25).

Claimant appealed ALJ Price's decision. (Tr. 203-07). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Price's decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## I. Standard of Review

When reviewing an Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan,* 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

II. Conclusions of Law

Claimant argues the Commissioner's decision should be remanded because ALJ Price violated Social Security Ruling 00-4p, which requires an ALJ to identify, address, and explain the resolution of apparent conflicts between the testimony of the VE and the contents of the Dictionary of Occupational Titles ("DOT") published by the Department of Labor. (DN 17, at PageID # 1138). Specifically, Claimant highlights that (1) the page job identified by the VE requires frequent stooping and kneeling according to the DOT, but Claimant's RFC limits him to occasional stooping and kneeling; and (2) all three jobs identified by the VE (non-postal mail clerk, router, and page) require frequent reaching, but Claimant's RFC restricts him from overhead reaching. (*Id.* at PageID # 1139). In support, Claimant cites to cases holding that an ALJ has an affirmative duty to discover and address apparent inconsistencies between the VE's testimony and the DOT. (*Id.* at PageID # 1142). ALJ Price's failure to account for and resolve these discrepancies, Claimant argues, warrants remand. (*Id.* at PageID # 1143).

In response, the Commissioner acknowledges that a conflict exists between the VE's testimony, the information in the DOT, and Claimant's RFC limitations regarding the page job identified by the VE. (DN 19, at PageID # 1150). Despite this conflict, however, the Commissioner argues that neither the non-postal mail clerk nor router jobs impermissibly conflict with ALJ Price's RFC restrictions. (*Id.*). Because the 48,000 non-postal mail clerk and router jobs identified by the VE qualify as a significant number of jobs in the national economy, the Commissioner contends his burden was satisfied. (*Id.*). Moreover, the Commissioner asserts that ALJ Price complied with SSR 00-4p by not only asking the VE twice whether her testimony was consistent with the DOT, but also questioning her about the impact of a restriction on

5

overhead reaching. (*Id.* at PageID # 1152). According to the Commissioner, no additional follow-up by ALJ Price was necessary as to the accuracy of the VE's testimony. (*Id.*).

In reply, Claimant reiterates that a conflict exists between the VE's testimony, the DOT, and Claimant's RFC restrictions. He emphasizes a section of the "Vocational Expert Handbook" which allegedly confirms this conflict. (DN 20, at PageID # 1156-57). Because he believes the VE falsely claimed that no conflict existed and ALJ Price never resolved the conflict, Claimant argues the case should be remanded. (*Id.* at PageID # 1158).

It is undisputed that when making a non-guideline determination, an ALJ can rely on evidence such as the testimony of a VE and the DOT to establish that work exists in the national economy. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847 (6th Cir. 2010). SSR 00-4p was created in December of 2000 to clarify the Administration's standards "for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs) . . . and other reliable sources of occupational information in the evaluation of disability claims." Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). This Ruling advises that occupational evidence provided by a VE "should generally be consistent with the occupational information supplied by the DOT." *Id.* at *2. The Ruling continues: "[w]hen there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence" to support a disability determination. *Id.* Part of the ALJ's duty under this Ruling is inquiring on the record whether such a consistency exists. *Id.*

SSR 00-4p does not address how an ALJ should proceed when a conflict between the VE testimony and the DOT is not apparent. But the Sixth Circuit has held that where a conflict is not apparent and a claimant fails to bring the conflict to the ALJ's attention, the ALJ is neither

6

required "to conduct an independent investigation into the testimony of witnesses to determine if they are correct" nor "explain how the conflict was resolved." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).

In 2020, the Sixth Circuit reaffirmed its holding in *Kyle*, stating that an ALJ can rely on VE testimony so long as the ALJ "either ensure[s] that the evidence does not conflict with the information in the DOT or obtain[s] a reasonable explanation for any conflict." *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316-18 (6th Cir. 2020) (citing *Kyle*, 609 F.3d at 855; *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009)). An ALJ satisfies this requirement by asking a VE whether their testimony aligns with the DOT. *Id.*; *see also Lindsley*, 560 F.3d at 603. In *O'Neal*, the Sixth Circuit did not base its finding that the VE's testimony constituted substantial evidence of jobs and the claimant's ability to perform work in significant numbers in the national economy based solely on the ALJ ensuring that no conflict existed with the DOT and the VE's testimony. Rather, the Sixth Circuit also based its determination on the fact that the claimant's counsel "had a chance to cross-examine the vocational expert during the hearing, and he did not." *Id.* at 318.

In this case, ALJ Price presented a hypothetical set of limitations to the VE during Claimant's administrative hearing. Relevant to Claimant's argument is the ALJ's hypothetical limitation that the individual could perform "no more than occasional stooping [or] kneeling." (Tr. 63). The VE responded that such a hypothetical individual could perform work activity in the national economy and gave three examples: (1) non-postal mail clerk (DOT # 209.687-026), with roughly 13,000 jobs in the national economy; (2) router (DOT # 222.587-038), with roughly 35,000 jobs in the national economy; and (3) page (DOT # 249.687-014), with roughly 5,000

7

jobs in the national economy. (Tr. 64-65). The VE identified that all three were jobs with a light exertional level and an SVP of two.[2] (*Id.*).

Following the strictures of SSR 00-4p, ALJ Price then asked the VE whether the testimony she provided was consistent with the DOT, to which the VE responded in the affirmative, although she clarified that there were some things not specifically addressed by the DOT such as interacting with the public. (Tr. 65). She explained that for public interaction "and anywhere else we may have stepped outside of the bounds of the DOT[,]" she based her testimony on her experience in job placement, job analysis, and the professional research she had conducted in this field. (*Id.*).

ALJ Price then asked the VE additional questions regarding the impact of an option to sit and stand every thirty minutes and a restriction on overhead reaching. (Tr. 65-66). Specifically, ALJ Price inquired into whether any of the jobs identified by the VE would "require an individual to perform any overhead reaching" or if a restriction on this type of movement would have an impact on these jobs. (*Id.*). The VE responded that such a restriction would not affect the jobs. (Tr. 66). ALJ Price went on to ask the VE if her testimony was consistent with the DOT regarding these additional limitations, to which the VE responded that it was. (*Id.*).

ALJ Price then gave Claimant's counsel the opportunity to examine the VE. Claimant's counsel inquired into employer tolerance for unscheduled absences and off-task behavior as well as the employee's level of interaction with co-workers. (Tr. 66-67). Notably, she did not ask any specific questions regarding the DOT job titles identified by the VE or any potential conflicts between the VE's testimony and the DOT.

---

[2] The Specific Vocational Preparation ("SVP") of a job title indicates the amount of time required for a typical claimant to learn the techniques, acquire the information, and develop the facility needed for average performance in a job. Program Operations Manual System DI 25001.001 (SSA 2022). For example, if a job title has an SVP of two, it is classified as "unskilled work" and a claimant should learn how to perform the job through a short demonstration or within one month. *Id.*

ALJ Price adopted an RFC substantially identical to the hypothetical presented to the VE during the hearing. (Tr. 20). He found, through the date last insured, Claimant could perform "light work" but with several limitations, including occasional stooping or kneeling and an avoidance of "overhead reaching." (*Id.*). Relying on the VE's testimony, ALJ Price ultimately determined that, "through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. 24).

Upon independently reviewing the DOT job titles the ALJ relied upon, the Court agrees discrepancies exist between the VE's testimony and the job titles identified by the VE. Even the Commissioner concedes the frequent stooping and kneeling requirements of the page job conflict with the RFC limitation of occasional stooping and kneeling. (DN 19, at PageID # 1150); *see also* DOT # 249.687-014, 1991 WL 672351 (Jan. 1, 2016). In addition, all three jobs identified by the VE require frequent reaching. *See* DOT # 249.687-014, 1991 WL 672351 (Jan. 1, 2016); DOT # 209.687-026, 1991 WL 671813 (Jan. 1, 2016); DOT # 222.587-038, 1991 WL 672123 (Jan. 1, 2016). As pointed out by Claimant, it seems clear that the restrictions found in the DOT are broad enough to encompass reaching in all directions, including overhead. *See* SSR 85-15, 1985 WL 56857 (Jan. 1, 1985) (reaching means "extending the hands and arms in any direction").

Yet under these circumstances, the Court cannot say the conflicts in the VE's testimony were apparent. Consistent with SSR 00-4p, after presenting his initial hypothetical set of limitations including that of occasional stooping and kneeling, ALJ Price asked the VE whether there was a conflict. (Tr. 65). Although the VE mentioned a potential conflict with the limitation on public interaction, she stated that the rest of her testimony was consistent with the DOT. (*Id.*).

9

Not only did ALJ Price specifically inquire into the impact of a restriction on overhead reaching, he also asked the VE again whether this limitation conflicted with the DOT. (Tr. 65-66). The VE responded that the restriction would not affect the identified jobs and there was no conflict. (*Id.*). The Claimant did not bring either of these conflicts to ALJ Price's attention at the hearing. Pursuant to SSR 00-4p and Sixth Circuit caselaw, ALJ Price was not required to further confirm the accuracy of the VE's testimony by uncovering, then resolving, the non-apparent conflicts. *See Osmon v. Comm'r of Soc. Sec.*, No. 3:15-cv-561-CHL, 2016 U.S. Dist. LEXIS 143063, at *9 (W.D. Ky. Oct. 17, 2016) (ALJ did not err in relying on VE's testimony even though it conflicted with the DOT because the conflict was not apparent from her testimony); *Green v. Comm'r of Soc. Sec.*, No. 3:15-CV-00910-TBR-CHL, 2017 U.S. Dist. LEXIS 45022, at *7 (W.D. Ky. Mar. 28, 2017) (confirming Commissioner's decision to deny plaintiff's claim because conflict between occasional overhead reaching and frequent reaching was not apparent from VE's testimony or counsel's cross-examination). Because ALJ Price fulfilled his obligation under SSR 00-4p by inquiring of the VE and Claimant's counsel did not ask questions on the subject or object to the VE's testimony, ALJ Price did not err in relying on the VE's testimony.

## III. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

NOTICE

Therefore, under the provisions of 28 U.S.C. 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:     Counsel